UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

B. LYNN CALLAWAY,

                    Plaintiff,

vs.                              Case No.  2:07-cv-132-FtM-29SPC

JORGE HERNANDEZ, individually; CRAIG
COFFEE, individually;

                    Defendants.
_____

**<u>OPINION AND ORDER</u>**

     This matter comes before the Court on Defendants' Motion for
Summary Judgment (Doc. #102) and supporting Memorandum of Law (Doc.
#103), both filed on May 22, 2009.  Plaintiff's Opposition to
Defendants' Motion for Summary Judgment (Doc. #116) was filed on
June 22, 2009.  With the Court's permission, Plaintiff also filed
a Supplemental Opposition (Doc. #173) on March 16, 2010.
Defendants filed a Reply (Doc. #178) on March 22, 2010.  Also
before the Court is Plaintiff's Motion for Summary Judgment and
Memorandum of law (Doc. #163) filed on March 8, 2010.  Defendants
filed a Response (Doc. #177) on March 22, 2010.

**I.**

    First, some preliminary matters.  This matter is before the
Court on plaintiff's Amended Complaint (Doc. #58) only.  This is
the operative pleading, and supercedes the original complaint filed
in this case.  <u>Pintando v. Miami-Dade Hous. Agency</u>, 501 F.3d 1241,
1243 (11th Cir. 2007).  As a result, plaintiff is suing in her

individual capacity only, and defendants are each sued in their individual capacities only.

Additionally, plaintiff states that she previously informed defendants' counsel that she was abandoning Count III of the Amended Complaint. (Doc. #118, p. 4.) In apparent reliance upon this, defendants' summary judgment motion does not address Count III. Based upon plaintiff's representation, the Court will dismiss Count III of the Amended Complaint.

Count I of the Amended Complaint alleges a claim of "Deprivation of Constitutional Rights" pursuant to 42 U.S.C. § 1983 against each defendant. As defendants correctly note, Count I does not identify <u>what</u> constitutional right was violated. However, the "Facts Common to All Counts" section of the Amended Complaint alleges that defendants' conduct violated due process. (Doc. #58, ¶ 12.) The parties both address Count I as a claimed violation of due process (Doc. #102 p. 3; Doc. #118, p. 3), as will the Court.[1] In Count II, plaintiff alleges a claim of Intentional Infliction of Emotional Distress under Florida law, and asserts federal jurisdiction under 28 U.S.C. § 1367(a). (Doc. #58, p. 7.)

---

[1]On occasion plaintiff refers to the Fourth Amendment (Doc. #118, p. 25), but neither the allegations or the facts support an unlawful seizure under the Fourth Amendment. As a legal matter, it is clear that any search and seizure claim must be brought under the Fourth Amendment, not the Fourteenth Amendment due process clause. <u>Albright v. Oliver</u>, 510 U.S. 266 (1994); <u>Carr v. Tatangelo</u>, 338 F.3d 1259, 1271 (11th Cir. 2003). As a factual matter, the Amended Complaint fails to set forth <u>any</u> facts which would support a claimed violation of plaintiff's right against unreasonable search and seizure.

## II.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue at to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. Id. The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial motion. Celotex Corp. v. Catrett, 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999). In ruling on a motion for summary judgment, if there is a conflict in the evidence the non-moving party's evidence is to

be believed and all reasonable inferences must be drawn in favor of the non-moving party. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). Conclusory allegations based on subjective beliefs, however, are insufficient to create a genuine issue of material fact. Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000). In the summary judgment context, the Court must construe *pro se* pleadings more liberally than those of a party represented by an attorney. Loren v. Sasser, 309 F.3d 1296, 1301 (11th Cir. 2002).

### III.

Defendants' summary judgment motion raises three issues. Defendants argue that plaintiff fails to plead or prove a cause of action for violation of a constitutional right in Count I; that they are entitled to qualified immunity based upon the allegations and the evidence; and that the evidence fails to support the claim in Count II. Plaintiff argues to the contrary as to each issue.

Plaintiff's summary judgment motion alleges that plaintiff's due process rights were violated by continued violations of a bankruptcy stay. Further, plaintiff alleges that it is clear that defendants' conduct and actions were willful, intentional violations of the bankruptcy stay, and were clearly personal and malicious. Thus, plaintiff argues, summary judgment should be granted as to her claim for intentional infliction of emotional distress. Defendants argue to the contrary as to both issues.

At all relevant times, defendant Craig Coffee (Coffee) was the head of the DeSoto County Community Development agency, and defendant Jorge Hernandez (Hernandez) was his employee. While each defendant is sued in his individual capacity, the actions are alleged to have occurred during the performance of their duties with DeSoto County Community Development in connection with real property located at 3132 S.W. Highway 17, Arcadia, Florida (hereinafter the Property).

**Real Property At Issue**

A July 30, 2004, letter from the True Holiness Church to DeSoto County Community Development stated that possession of the Property was being transferred to B. Lynn Callaway, Trustee, for the use of You Ride USA, Inc., which intended to use the property as its office, sales lot, and dealership mechanic shop. (Doc. #118-3.) The letter further stated that You Ride USA, Inc. "will continue the clean up of the property to satisfy the code enforcement problems." (Id.) The letter also stated that the property had been used as an automobile repair (mechanic) shop since 2001, and that the mechanic shop was taken over from Stanley Kazwell. (Id.) A similar letter was sent by Mr. Kazwell to DeSoto County Community Development the next day. Mr. Kazwell stated the property had been used as an automobile mechanic repair shop since 1976. (Doc. #118-4.)

On August 6, 2004, a Quit Claim Deed was filed in DeSoto County in which Mr. Kazwell conveyed the Property to B. Lynn

Callaway, Trustee of the Twin Lakes Trust.  (Doc. #160-1, p. 4.)
In the Amended Complaint, plaintiff B. Lynn Callaway (Callaway or
plaintiff) stated she purchased the Property with the intent to
lease it as a used car sales dealership.  (Doc. #58, ¶ 8.)

On or about September 9, 2004, DeSoto County, Florida issued
an Occupational License for "Retail Sales" to You Ride U.S.A., Inc.
for the Property for the license year 2004-2005.  (Doc. #118-4;
Doc. #160-1, p. 8.)  The Occupational License stated in part that
"THIS LICENSE IS VALID ONLY IF NO OTHER LAW OR ORDINANCE IS
VIOLATED, ESPECIALLY ZONING." Id.  Noel D. Clark Jr. was listed as
the agent.  Id.

Sometime in 2004, Callaway entered into a lease with K. A.
Delaet (Delaet or Debtor) to operate the Property as a used car
sales dealership.  (Bankr. Doc. #12; Doc. #58, p. 3.)  Plaintiff
represents that she also was an individual private lender who
personally floor-planned the cars to be sold by Delaet.  (Doc.
#118, p. 3.)

**Code Enforcement Violations and Special Master Proceedings**

On or about September 7, 2005, defendant Hernandez issued a
Notice to Correct Violation to Noel D. Clark, Jr.  (Doc. #160-1,
p. 20.)  The Notice stated that on August 22, 2005, the property at
3132 S.W. Hwy 17 was visited and revealed that a used car sales lot
(Auto Depot USA) was being operated on the property.  (Id.)  The
Notice also stated that the use of the property as a used car lot
required that the owner submit a Development Plan for the change of

-6-

use and that the County approve it. (Id.) Additionally, the Notice stated that an Occupational License was required for any person engaged in or managing any business, profession or occupation in DeSoto County. (Id.) Mr. Clark was given until September 15, 2005, to correct the violation by stopping all operations/work and turning in the required development plan application. (Id.) It was further required that the operator of the used car lot must have a current occupational license when and if the county approved the change in use. (Id.) The Notice stated that failure to timely correct the violation would result in a civil infraction citation being issued which would be heard by a county court judge or special master. (Id.) A fine of up to $250 per violation may be imposed. (Id.)

On or about October 26, 2006, a Special Master hearing was held in Arcadia, Florida regarding the code violation notice at issue. (Doc. #102, p. 6.) There is a factual dispute as to whether Plaintiff appeared for the hearing. (Id. at 6-7.) According to the transcript, the Special Master was to issue a cease and desist order on the Property, which could be cured by filing a development plan for the Property and applying for an occupational license. (Doc. #102, Exh. C, pp. 51-53.)

On or about April 4, 2007, Debtor Delaet delivered a "Suggestion of Bankruptcy" to defendants in connection with the code enforcement proceedings before the special master. (Doc. #118-8.) This stated that Debtor Delaet had filed a Chapter 13

Bankruptcy proceeding in the Middle District of Florida, and that pursuant to 11 U.S.C. §§ 362 and 1301 an automatic stay was in effect as to Debtor and "any co-obligator, co-debtor or co-signor in this non bankruptcy action", and that Debtor and Callaway are respondents in the matter before the special master.   <u>Id.</u>   The Suggestion further stated that the code enforcement proceedings were being advanced in violation of the Debtor's automatic stay. <u>Id.</u>

On or about April 18, 2007, B. Lynn Callaway, Trustee, filed an Amended Motion to Abate the proceedings before the special master.   (Doc. #118-12.)   Callaway sought to abate the code enforcement proceedings based upon the filing of the federal civil action in this case.  (<u>Id.</u>)  Callaway asserted that the County was attempting to extort her to assist the County in circumventing her tenants' (Delaet) bankruptcy proceeding, to remove property from the physical location which was property of Delaet's bankruptcy estate, to violate the bankruptcy reaffirmation agreement without due process, and to violate the automatic stay.  (<u>Id.</u>)

On or about April 19, 2007, an Order Continuing Special Master Hearing was entered in the code enforcement proceedings.   No specific date was set at that time.  (Doc. #118-13.)  The Special Master proceeding is currently on appeal and has been stayed. (Doc. #102, p. 7.)

**Bankruptcy Proceedings**

On or about June 3, 2005, You Ride U.S.A., Inc. was voluntarily dissolved pursuant to Articles of Dissolution filed by Delaet. (Doc. #160-1, p. 13-14.) On or about June 22, 2005, Delaet filed a *pro se* voluntary petition under Chapter 13 in the Bankruptcy Court, Case No. 9:05-bk-12583-ALP.[2] (Bk. Doc. #1.) The cars that Callaway personally floor-planned became property subject to the Chapter 13 bankruptcy lien. (Doc. #118, p. 3.)

On or about March 14, 2006, an Order Confirming Plan was entered by the bankruptcy court judge approving the plan submitted by Debtor, as modified at a hearing. (Doc. #118-11.) On April 4, 2006, the bankruptcy court entered an Order Allowing and Disallowing Claims. (Doc. #118-9.)

On or about April 24, 2007, Delaet filed an Adversary Complaint in the bankruptcy proceeding accusing the defendants and others of violating the automatic stay. (Doc. #118-14; Bk. Doc. #70.) The claim included the assertion that defendants were attempting to extort Callaway into circumventing the Bankruptcy order and take property of the bankruptcy estate and strong-arm Debtor out of business without due process of law. (Id.) The Adversary Complaint sought damages for willful violation of the

---

[2]While plaintiff has filed some of the documents from that case, the Court will take judicial notice of the documents in that court file. The Court may make reference to the bankruptcy court docket as "Bk. Doc."

automatic stay and an injunction against defendants and others. (Id.)  On or about May 8, 2007, Delaet filed a Voluntary Dismissal of the Adversary Complaint.  (See Doc. #118-16.)

Delaet's estate was fully administered and the bankruptcy case was closed on February 26, 2009.  (Bk. Doc. #83.)

**IV.**

As noted above, the parties agree that Count I asserts a claim pursuant to 42 U.S.C. § 1983 for a violation of plaintiff's due process rights.  The parties disagree, however, as to the thrust of that claim, with defendants focusing on the notice of the code enforcement hearing and plaintiff focusing on the asserted attempts to cause her to violate the bankruptcy stay.  While the Amended Complaint suffers from a certain lack of clarity, in light of plaintiff's *pro se* status the Court has considered plaintiff's clarification of her claim as set forth in the Opposition to Defendants' Motion for Summary Judgment (Doc. #118) and her own Motion for Summary Judgment.  (Doc. #163.)  Since a plaintiff is the master of his or her own claim, the Court views the scope of the claim as being that set forth by plaintiff.

As to Count I, plaintiff's claim is that defendants continued with the code enforcement proceedings and hearing in violation of the Chapter 13 bankruptcy stay, and attempted to coerce plaintiff into taking actions with regard to her lease with the bankruptcy Debtor which would have caused plaintiff to violate the bankruptcy

stay. (Doc. #163, pp. 6-8.) Defendants' goal, plaintiff asserts, was to put the Debtor out of business. (Id. at p. 10.) These coercive attempts to have plaintiff violate the bankruptcy stay, plaintiff alleges, was a violation of plaintiff's constitutional due process rights. (Id. at p. 7.) Since plaintiff was the individual who floor-planned the vehicles for Debtor's car sales business, this due process violation resulted in damages to plaintiff. (Id. at p. 13.)

Title 42 U.S.C. § 1983 imposes liability on any person who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." To establish a claim under 42 U.S.C. § 1983, plaintiff must allege and ultimately prove that (1) defendant deprived her of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Richardson v. Johnson, No. 08-16795, 2010 WL 693629 at *2 (11th Cir. Mar. 2, 2010) (citing U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001). In addition, plaintiff must allege and establish an affirmative causal connection between the defendants' conduct and the constitutional deprivation. Marsh v. Butler County, Ala., 268 F.3d 1014, 1059 (11th Cir. 2001); Troupe v. Sarasota County, Fla., 419 F.3d 1160, 1165 (11th Cir. 2005). Section 1983 is not itself a source of substantive rights, but merely provides a procedural mechanism for vindicating federal rights created elsewhere. "One cannot go into court and claim a 'violation of

§ 1983' -- for § 1983 by itself does not protect anyone against anything." Gonzaga Univ. v. Doe, 536 U.S. 273, 285 (2002) (quoting Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 617 (1979)); see also Skinner v. City of Miami, Fla., 62 F.3d 344, 347 (11th Cir. 1995).

Essentially, plaintiff charges that defendants conspired to willfully and repeatedly violate the bankruptcy stay, which resulted in a violation of plaintiff's due process rights under the Fourteenth Amendment. "Conspiring to violate another person's constitutional rights violates section 1983." Rowe v. Fort Lauderdale, 279 F.3d 1271, 1283 (11th Cir. 2002). "To prove a 42 U.S.C. § 1983 conspiracy, a plaintiff must show that the parties reached an understanding to deny the plaintiff his or her rights and prove an actionable wrong to support the conspiracy." Bailey v. Bd. of County Comm'rs, 956 F.2d 1112, 1122 (11th Cir. 1992), cert. denied, 506 U.S. 832 (1992), (quoting Bendiburg v. Dempsey, 909 F.2d 463, 468 (11th Cir. 1990)). The Court reads plaintiff's Amended Complaint liberally to include both substantive and conspiracy claims.

## A. Violation of the Automatic Bankruptcy Stay

The automatic stay provision of the Bankruptcy Act, 11 U.S.C. § 362, provides in pertinent part:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of--

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning a corporate debtor's tax liability for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title.

11 U.S.C. § 362(a).  The automatic stay remains in effect until, inter alia, the earliest of the close or dismissal of the bankruptcy case.  11 U.S.C. § 362(c)(2); <u>United States v. White</u>, 466 F.3d 1241, 1244 (11th Cir. 2006).  The automatic stay serves a dual purpose: (1) relieving the debtor from added financial pressure during the pendency of bankruptcy proceedings, and (2) protecting creditors by preventing the premature disbursement of the bankruptcy debtor's estate.  <u>Carver v. Carver</u>, 954 F.2d 1573, 1576 (11th Cir. 1992).

There are, however, several exceptions to the automatic bankruptcy stay provisions.  <u>See</u> 11 U.S.C. § 362(b).  The bankruptcy stay does not bar "the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's police or regulatory power." <u>Griggs v. Gadsden Revenue Dep't</u>, 327 Fed. Appx. 186, 188 (11th Cir. 2009) (citing 11 U.S.C. § 362(b)); <u>see also</u> <u>In re Union Golf of Fla., Inc.</u>, 242 B.R. 51, 58 (Bk. M.D. Fla. 1998).  "The exception to the automatic stay . . . recognizes that the government must be able to enforce its laws uniformly without regard to the debtor's position in the bankruptcy court. [ ] Consequently, Congress permitted a suit by the government to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws to proceed."  <u>Brock v. Rusco Indus., Inc.</u>, 842 F.2d 270, 273 (11th Cir. 1988)(internal quotations and citations omitted).

-14-

Defendants, as code enforcement agents for Desoto County, served the agent of the Property with notices to correct code violations regarding the use of the property without a proper permit and the failure to obtain an occupational license. (Doc. #160-1, p. 20.) Failure to correct the violation would result in a citation to be heard by a Special Master and a fine. Id. In Griggs, the Eleventh Circuit upheld the district court's grant of summary judgment which found no violation of the automatic stay when city revenue officials issued Griggs summonses and prosecuted her for probation violation for doing business without a license. Griggs, 327 Fed. Appx. at 187-188. While, unlike in Griggs, this case involves an administrative proceeding and not a criminal action, the enforcement of a government unit's zoning or other ordinance is a valid exercise of its police power. See Belle Terre v. Boraas, 416 U.S. 1, 9 (1974); In re Union Golf of Fla., Inc., 242 B.R. at 58.

The Court finds that defendants were acting under their police power as government agents when they commenced a proceeding to enforce violations of Desoto County regulations. Thus, the defendants' actions are subject to an exception to an automatic bankruptcy stay. See 11 U.S.C. § 362 (b)(4); Brock, 842 F.2d at 273. Plaintiff has asserted that defendants noticed a code violation in bad faith. However, plaintiff has not denied that the Property was in violation of the Desoto County regulations at issue, nor shown that the defendants cited the Property in order to

frustrate the bankruptcy court proceeding.  See Griggs, 327 Fed. Appx. at 188.  Accordingly, there was no violation of the automatic stay.  As further discussed below, even if there was a violation of the automatic stay it did not constitute a violation of plaintiff's constitutional rights.

## B. Due Process Violation

The Fourteenth Amendment to the United States Constitution explicitly guarantees to each citizen that no State shall "deprive any person of life, liberty, or property, without due process of law . . . ."  U.S. Const., amend. XIV, § 1.  The Supreme Court has determined that the Due Process Clause provides both procedural and substantive rights.  Zinermon v. Burch, 494 U.S. 113, 125 (1990); Doe v. Moore, 410 F.3d 1337, 1342 (11th Cir. 2005).

### Substantive Due Process

The substantive due process component of the Due Process Clause protects only those rights that are "fundamental," that is, rights that are so implicit in the concept of ordered liberty that neither liberty nor justice would exist if they were sacrificed. Moore, 410 F.3d at 1342-43; McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994)(en banc).  "Fundamental rights are those rights created by the Constitution," Greenbriar Vill., L.L.C. v. Mountain Brook City, 345 F.3d 1258, 1262 (11th Cir. 2003), and have not generally been extended to tort law.  Skinner, 62 F.3d at 347.

The Court must analyze a substantive due process claim by first crafting a careful description of the asserted right and then determining whether that asserted right is one of the fundamental rights and liberties within the scope of substantive due process. Moore, 410 F.3d at 1343. "Conduct by a government actor that would amount to an intentional tort under state law would only rise to the level of a substantive due process violation if it 'shocks the conscience' or interferes with rights 'implicit in the concept of ordered liberty' – in other words, only if it affects individual rights guaranteed explicitly or implicitly by the Constitution itself." Dacosta v. Nwachukwa, 304 F.3d 1045, 1048 (11th Cir. 2002)(citation omitted).

Callaway makes the claim that the repeated violation of the automatic bankruptcy stay tortuously interfered with the contract between Callaway and Delaet, thus infringing her due process rights. (Doc. #163, pp. 4-5.) Therefore, plaintiff is alleging that defendants committed an intentional tort. As stated above, defendants did not violate the automatic stay. However, even assuming that defendants did willfully and repeatedly violate 11 U.S.C. § 362(a)(1), plaintiff has not shown the violations "shock[] the conscience". See,e.g., Dacosta, 304 F.3d at 1049; Skinner, 62 F.3d at 347-348. Here, Callaway has not pointed to any authority holding that an intentional tortuous interference of contract and violation of a bankruptcy stay rises to the level of a substantive due process violation. The Court concludes that this is not one of

those fundamental rights and liberties which is implicit in the concept of ordered liberty such that neither liberty nor justice would exist if it was sacrificed. Accordingly, Callaway has failed to establish a substantive due process violation actionable under § 1983.

**Procedural Due Process**

"In this circuit, a § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." Arrington v. Helms, 438 F.3d 1336, 1347 (11th Cir. 2006) (internal quotation and citation omitted). Even when the deprivation of a property interest occurs, "only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise." Cotton v. Jackson, 216 F.3d 1328, 1330-31 (11th Cir. 2000) (quoting McKinney, 20 F.3d at 1557). It is only the absence of adequate procedures to remedy the property deprivation of a protected property right that gives rise to a procedural due process claim. Id. at 1331.

Assuming plaintiff has a protected property right, to determine if a plaintiff has established a valid procedural due process claim the court looks to whether the available procedures were adequate. Cotton, 216 F.3d at 1331. In this case, the Court

must look to whether adequate procedures were available to Plaintiff to protect her rights as Delaet's creditor.

Callaway personally floor-planned the cars at the Property. (Doc. #118, p. 3.) When Delaet filed for bankruptcy, the contract between Callaway and Delaet was reaffirmed and an automatic stay went into effect. (Doc. #163, p. 5.) Callaway maintains that as a co-debtor, the automatic stay insulated plaintiff from indirect pressures to get to the Debtor. (Id. at 6-7.) Callaway argues that the protection of the automatic stay is a legal right that defendants willfully violated when they cited the Property for code violations. (Id. at p. 8.)

Plaintiff and Delaet could have addressed the violations in Delaet's pending bankruptcy proceeding.[3] In fact, Delaet did file an Adversarial Complaint against defendants, and others, for violations of the automatic stay. (Doc. #118-14; Bk. Doc. #70.) Further, as stated on the Notice to Correct Violation, there is a procedure to address the code violations with a special master. (See Doc. #160-1, p. 20.) Callaway filed an Amended Motion to Abate the proceedings before the special master based upon the same facts as presented in this case (Doc. #118-12), and Plaintiff and Delaet filed a Suggestion of Bankruptcy in the proceeding before

---

[3]Violations of an automatic stay are subject to contempt of court and a fine. Borg-Warner Acceptance Corp. v. Hall, 685 F.2d 1306, 1309 (11th Cir. 1982). Thus, a bankruptcy court is authorized to impose sanctions for a violation of the automatic stay provision. In re Evergreen Sec., Ltd., 570 F.3d 1257, 1273 (11th Cir. 2009).

the special master alleging that the code enforcement violations violated the automatic stay. (Doc. #118-8.) The Special Master ordered the proceeding indefinitely continued after Callaway filed an Amended Motion to Abate the proceedings based upon the same facts as presented in this case. (Docs. ## 118-12; 118-13; 163, p. 12.) Thus, there are multiple procedures in place, both at the state and federal level, to ensure that Plaintiff was not deprived of her procedural due process rights. Indeed, plaintiff and Delaet took advantage of these procedures to address whether there had been a violation of the automatic bankruptcy stay. Therefore, the Court finds that Callaway has failed to show that inadequate remedies were available to her to remedy any alleged procedural deprivations.

Thus, even if defendants did violate the bankruptcy stay, Callaway has not shown that defendants deprived her of a right secured under the Constitution or federal law. Therefore, Callaway has failed to establish a claim under § 1983. See Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998). Since plaintiff has failed to prove an actionable wrong, there can be no claim for conspiracy. Bailey, 956 F.2d at 1122. Accordingly, defendants' motion for summary judgment is granted as to Count I.

**Count II: Intentional Infliction of Emotional Distress**

Plaintiff's state law claim of intentional infliction of emotional distress was brought in federal court pursuant to the court's supplemental jurisdiction, 28 U.S.C. § 1367(a). While

summary judgment is being granted as to the only federal claims, the Court continues to have supplemental jurisdiction over the state law claim. <u>Carlsbad Tech., Inc. v. HIF Bio, Inc.</u>, 129 S.Ct. 1862, 1867 (2009). The Court must nonetheless determine whether, in the exercise of its discretion under 28 U.S.C. § 1367(c), to exercise that jurisdiction over this state law claim. The Court finds that it should exercise its jurisdiction over the state law claim. The case has been fully developed on the state law claim as well as the federal claim, and the factors such as judicial economy, convenience, and fairness to the parties all weigh in favor of the Court resolving the state law claim. Additionally, since the Violation Notice at issue was written on September 7, 2005, plaintiff's state law claim may be barred by the four year statute of limitations, Fla. Stat. § 95.11(3), if the state law claim was dismissed.

To show intentional infliction of emotional distress, Callaway must show that:

(1) The wrongdoer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result;

(2) the conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community;

(3) the conduct caused emotion[al] distress; and

(4) the emotional distress was severe.

<u>Gallogly v. Rodriguez</u>, 970 So. 2d 470, 471 (Fla. 2d DCA 2007)(citations omitted). "[T]he plaintiff must show conduct so

outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Byrd v. BT Foods, Inc., 948 So. 2d 921, 928 (Fla. 4th DCA 2007)(quotations and citations omitted). Whether the alleged conduct satisfies this high standard is a legal question "for the court to decide as a matter of law." Vance v. Southern Bell Tel. & Tel. Co., 983 F.2d 1573, 1575 n.7 (11th Cir. 1993)(quoting Baker v. Florida Nat'l Bank, 559 So. 2d 284, 287 (Fla. 4th DCA 1990)).

Defendants argue that summary judgment must be granted because Callaway has not shown conduct that was "outrageous" and that there are no facts that support the intentional infliction of emotional distress. (Doc. #103, p. 10.) Callaway responds that the defendants' repeatedly violated the bankruptcy stay and tortuously interfered with the contract between Callaway and Delaet which caused financial ruin and led Callaway to experience health problems. (Doc. #168, p. 14.)

Plaintiff's showing does not, as a matter of law, rise to the level of atrocity required by the Florida Supreme Court. Defendants' conduct, at the absolute worst, was maliciously issuing repeated code enforcement violations against the Property, after knowing they were violating an automatic bankruptcy stay. Even if this were a malicious attempt to put plaintiff and Debtor out of business, it still would not rise to the level of conduct that was "so outrageous in character", "atrocious", and "utterly

intolerable". <u>See, e.g., Williams v. Worldwide Flight Servs., Inc.</u>, 877 So. 2d 869, 870-71 (Fla. 3d DCA 2004)(constant use of derogatory racial terms, threats, and false accusations failed to state cause of action for intentional infliction of emotional distress); <u>Lay v. Roux Labs., Inc.</u>, 379 So. 2d 451, 452 (Fla. 1st DCA 1980)(same); <u>Valdes v. GAB Robins N. Am., Inc.</u>, 924 So. 2d 862, 866 (Fla. 3d DCA 2006)(investigating and then making false statements to state agency which lead to plaintiff's arrest was "not the type of conduct that is so outrageous in character and extreme in degree as to go beyond the bounds of decency and be deemed utterly intolerable in a civilized society."), <u>review denied</u>, 949 So. 2d 200 (Fla. 2007); <u>Koutsouradis v. Delta Air Lines, Inc.</u>, 427 F.3d 1339, 1345 (11th Cir. 2005)(insults and indignities do not support claim for intentional infliction of emotional distress); <u>Gonzalez-Jimenez de Ruiz v. United States</u>, 378 F.3d 1229, 1231 (11th Cir. 2004)(deception regarding father's terminal medical condition, failure to provide family with reasonable access to father during his illness, failure to inform family of father's death, providing substandard medical care, and delay in transporting remains failed to state a claim of intentional infliction of emotional distress); <u>Legrande v. Emmanuel</u>, 889 So. 2d 991, 995 (Fla. 3d DCA 2004)(clergyman falsely branded a thief in front of parishioners failed to state claim of intentional infliction of emotional distress). Therefore,

defendants are entitled to summary judgment as to the state law claim of intentional infliction of emotional distress.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1. Count III of the Amended Complaint is **DISMISSED**.

2. Defendants' Motion for Summary Judgment (Doc. #102) is **GRANTED**. Summary judgment is **GRANTED** in favor of each defendant and against plaintiff as to Counts I and II of the Amended Complaint.

3. Plaintiff's Motion for Summary Judgment (Doc. #163) is **DENIED.**

4. The Clerk of the Court shall enter judgment accordingly as to Counts I, II, and III. The Clerk is further directed to terminate all pending motions and deadlines as moot, cancel all hearings, and close the case.

**DONE AND ORDERED** at Fort Myers, Florida, this ___25th___ day of March, 2010.

JOHN E. STEELE
United States District Judge

Copies:
Plaintiff
Counsel of record